## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

MELVIN CEDENO
a/k/a "ICKEDMEL"
    *Plaintiff,*

v.

RYAN UPCHURCH and
FICTITIOUS PERSONS 1-100
    *Defendants*

CIVIL ACTION NO. _____

JURY TRIAL DEMANDED

## COMPLAINT

## INTRODUCTION

1.    This diversity action arises from the defamatory and tortious conduct of Defendant Ryan Upchurch, as explained below. It has some facts in common with those stated in the Amended Complaint (Doc. No. 9) for <u>Robertson v. Upchurch</u>, No. 3:23-cv-00770 (M.D. Tenn, August 2, 2023).

2.    Ryan Upchurch is a prominent YouTube personality. His eponymous YouTube channel boasts 3,140,000 subscribers. The channel is highly popular among aficionados of redneck rap music and conspiracy theories. Since Mr. Upchurch's channel began in 2014, his 500+ videos have been viewed a combined total of two billion, eighty million times.



3.     Melvin Cedeno, the Plaintiff herein, is also a YouTuber.  He is known by the handle "Ickedmel."  His focus is directed toward true crime stories and other current news events.

4.     On or about August 6, 2022, Kiely Rodni, a sixteen-year-old girl, disappeared after leaving a party near Tahoe National Forest in California.  Shortly thereafter, Messrs. Upchurch and Cedeno each started making videos discussing her disappearance.

5.     Mr. Upchurch theorized that she had been kidnapped by sex traffickers and pedophiles.  This theory was discredited when Miss Rodni's body and her missing car were found in a lake on August 21, 2022.  As it turns out, the young woman had driven her car off the road in a tragic accident.

6.     Prior to the discovery of Miss Rodni's body,  Mr. Upchurch prepared two videos accusing Mr. Cedeno of vile and heinous acts.  In the first video, published August 20, 2022, Mr. Upchurch states and/or implies that Mr. Cedeno's handle, "Ickedmel," is a code word for sex trafficking.  In the second video, published the next day, Mr. Upchurch states that Ickedmel, *i.e.,* Mr. Cedeno, is linked to a child pedophilia website.  Thus, in these videos, Mr. Upchurch states and/or implies that Mr. Cedeno is a sex-trafficking pedophile.

7.     Mr.  Upchurch's  statements  and/or  implications  are  false  and defamatory.

8.     As a direct and proximate result thereof, Mr. Cedeno suffered damage to his reputation and character as evidenced, *inter alia*, by threatening messages he

has received from supporters of Mr. Upchurch. These threatening messages, including one death threat, caused Mr. Cedeno to suffer extreme mental anguish. They also prompted Mr. Cedeno to purchase security cameras. He also incurred other damages (pecuniary and non-pecuniary).

9.     Mr. Cedeno respectfully submits that the laws of Florida should govern the substance of this dispute. Ergo, Mr. Cedeno seeks compensatory damages and punitive damages under Florida law for, *inter alia*, defamation, defamation by implication, and intentional infliction of emotional distress.

## PARTIES

10.     Melvin Cedeno is a citizen and resident of Florida.

11.     Ryan Upchurch is a citizen of Tennessee. Upon information and belief, he resides in Cheatham County, Tennessee. Thus, he resides in the Middle District of Tennessee and in the Nashville Division, thereof.

12.     The Fictitious Persons referenced herein are those persons, corporations, partnerships, associations, or other entities, presently unknown, who assisted Mr. Upchurch in committing the torts complained of herein. These parties, however, do not include any person who resides in any jurisdiction that would destroy diversity. Any reference herein to Mr. Upchurch shall be understood to also reference these Fictitious Persons.

3

## JURISDICTION AND VENUE

13.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and because there is complete diversity of citizenship.

14.     Venue is proper herein pursuant to 28 U.S.C. § 1391 (b) (1) because the only named Defendant, *i.e.,* Mr. Upchurch, resides in this District.

15.     This suit is timely filed.  In diversity actions, a federal court applies the statutes of limitations of the forum state unless an applicable statute of limitations from another state limits not only the remedy, but also affects the substantive right.[1] In Tennessee, claims for libel and for personal injury must be filed within one year after the cause of action accrues.[2]  Because the anniversary for the earliest video that forms the basis of this Complaint falls on Sunday, August 20, 2023, the Tennessee statute of limitations for this suit expires on Monday, August 21, 2023.[3] Alternatively, the statute of limitations under Florida law expires on August 20, 2024.[4]

---

[1] See Whitfield v. Knoxville, 756 F.2d 455, 461-62 (6th Cir. 1985).

[2] See T.C.A. § 28-3-104 (" … [T]he following actions shall be commenced within one (1) year after the cause of action accrued: … Actions for libel, injuries to the person….").

[3] See T.C.A. § 1-3-102 ("The time within which any act provided by law is to be done shall be computed by excluding the first day and including the last, unless the last day is a … Sunday… and then it shall also be excluded.").

[4] See Fla. Stat. Ann. § 95.11 (4) (h) ("Actions other than for recovery of real property shall be commenced as follows: … WITHIN TWO YEARS.— … An action for libel or slander.").

4

## FACTUAL BACKGROUND

16.     Mr. Cedeno incorporates all the above paragraphs.

17.     Kiely Rodni disappeared on August 6, 2022.  On August 9, 2022, Mr. Cedeno began posting videos discussing Miss Rodni's disappearance.

18.     Shortly afterwards, Ronnie Jones started calling into Mr. Cedeno's live webcast.  On August 15, 2022, Mr. Upchurch was listening to Mr. Cedeno's webcast when Mr. Jones called the program.  After Mr. Upchurch had posted comments to the live chat feed objecting to Mr. Jones's viewpoint, Mr. Cedeno invited Mr. Upchurch onto the show to discuss the matter.  Mr. Upchurch agreed and called the number to the webcast, which has a 954-area code that is assigned to Florida.  Ergo, Mr. Upchurch knew or should have known that he was communicating with Mr. Cedeno while the latter was in Florida.

19.     In his videos, Mr. Upchurch implies that Mr. Jones was somehow involved in the disappearance of Miss Rodni.  Moreover, because Mr. Jones had called into Mr. Cedeno's webcast, Mr. Upchurch suggests that Mr. Cedeno (*i.e.,* Ickedmel) was associated with Mr. Jones.  *A fortiori*, Mr. Upchurch suggests that Mr. Cedeno was involved in Miss Rodni's disappearance.[5]

20.     On August 20, 2022, Mr. Upchurch uploaded a video to YouTube in which he states that Mr. Cedeno's handle, "Ickedmel," is a "sex trafficking [sic] code

---

[5] Coincidentally, Miss Rodni's car was found on August 21, 2022, only a few days after Mr. Upchurch had implied that Mr. Cedeno was somehow responsible for her disappearance. According to the coroner's report, she died by drowning when her car drove into a body of water. Thus, Mr. Upchurch's comments about Mr. Cedeno having something to do with Miss Rodni's disappearance were discredited almost immediately after they were published.

word."  In this video, he also uses a marker and a sheet of paper to write false and defamatory anagrams of "Ickedmel," such as "cel me kid" and "licked me."  The statements and/or implications contained within this video and in its title are referred to herein as "Defamation Specimen 1."  The video is transcribed as follows:

> All right so check this out.  You know how these [f— k]in weirdos out here who like do stuff to kids and [s— t] have like code words?
>
> Okay, well the dude who's like, "Hey Ryan, I don't know anything about this missing kid."  Okay, look at his name. Look how it's spelled.  All right.
>
> His YouTube name is spelled I-C-K-E-D-M-E-L. "Ickedmel."  If you unscramble it, it says….  That's only using the letters that are there — and it also says, "licked me."  Why is his name unscrambled say, "cel me kid" [and] "licked me," like … like "sell me kid.  If you sound it out it says, "Sell me kid."
>
> Why?  Why does it say, "licked me?"  If you look for children and your page is dedicated to looking for children and covering missing children.
>
> Why?  Why?  Why?  This is [f— k]in weird disco man. Explain this mother [f— k]er![6]

21.    Mr. Upchurch answered his own question that very same day.  On August 20, 2022, he republished a clip of one of Mr. Cedeno's videos from 2016 wherein Mr. Cedeno explains why his handle is "Ickedmel."  In this clip, as Mr. Upchurch republished it, Mr. Cedeno explains:

> "Ickedmel" is the name I got from years ago when AOL first came out.  I used to be in a hacking group … kind of a

---

[6] Ryan Upchurch, *"Ickedmel" is a sex trafficing [sic] code word.👀*, https://www.youtube.com/watch?v=nvpAIrEuWUs, last visited August 21, 2023.

hacking group.  It was just a bunch of young kids who were downloading hacking programs.

We would go into AOL chat rooms and AOL instant messenger and, uh, we would pretty much blow up the chat rooms, flood them, and we would pretty much cause the computers of other people to get frozen, and you can't do anything.  Uh… that's one of the things I remember doing. [Cough.]

Uh, the name of the group… it was called "Icked Army," and a lot of the members of the group, they had "Icked" in front of their name and they would adopt whatever they wanted to put next to it.  That's how I got "Ickedmel."[7]

22.    In his 2016 video clip, Mr. Cedeno does not mention any sexual reason for his selection of the handle "Ickedmel," nor does he mention pedophilia or sex trafficking.  Therefore, by virtue of his republication of Mr. Cedeno's explanation for "Ickedmel," Mr. Upchurch knew that his statement about "Ickedmel" being a sex-trafficking code word was false, or at the very least, Mr. Upchurch invariably had a high degree of awareness of its probable falsity.  Thus, Mr. Upchurch acted with actual malice and/or with reckless disregard for the truth when he made the false and defamatory assertion.

23.    Defamation Specimen 1 has been viewed at least 124,000 times and has been liked 6,990 times.  Thus, approximately 7,000 people have expressed belief in what Mr. Upchurch has stated or implied, thereby evincing prodigious damage to Mr. Cedeno's reputation and character.

---

[7] Ryan Upchurch, *Ickedmel explaining how he's able to hack your phone camera and do weird illegal internet [s—t]* 👀, https://www.youtube.com/watch?v=88SthtfpX6k (republishing Melvin Cedeno, *What does Ickedmel mean????*, https://www.youtube.com/watch?v=uvMaQF3izks), last accessed on August 20, 2023.

24.     If over 124,000 views and nearly 7,000 likes were not bad enough, the complete reach of Defamation Specimen 1's libelous title—*i.e., "Ickedmel" is a sex trafficking [sic] code word.* 👀—is mind-blowing when one considers the number of times it has been impressed upon the feeds of YouTube viewers.

25.     According to Google, which owns YouTube, an "impression" is defined as the number of times a thumbnail was shown to viewers on YouTube.[8]  Similarly, the "impressions click-through-rate" (or the "CTR") is defined as how often viewers watched a video after seeing a thumbnail.[9]   Not every impression leads to a view, nor does every view come from an impression.   Nevertheless, according to Google, "[h]alf of all channels and videos on YouTube have an impressions CTR that can range between 2% and 10%."[10]

26.     Therefore, to garner 124,000 views with an impressions CTR of 2% to 10%, the thumbnail of Defamation Specimen 1 – and by extension, its libelous title – must have been impressed upon the YouTube feeds of 1.2 million to 6.1 million people, unless it was also shared by way of Facebook, Twitter, Instagram, TikTok, or any other social media network whose impressions are not measured by YouTube.  In any

---

[8]     See Google.Com, *Check your impressions and click-through rate*, https://support.google.com/youtube/answer/9314486?visit_&sjid=3111205933172141012-NA, last visited on August 20, 2023.

[9]     Ibid.

[10]     Google.Com, *Impressions & click-through-rate FAQs*, https://support.google.com/youtube/answer/7628154?hl=en&ref_topic=9313692&sjid=3111205933172141012-NA#zippy=%2Chow-do-i-know-if-my-impressions-click-through-rate-is-high-or-low, last visited on August 20, 2023.

event, Defamation Specimen 1's false and defamatory title has been seen by millions of people. Given that Mr. Upchurch's channel has 3.1 million subscribers, this estimate is reasonable.

27. As further evidence of the reach of Mr. Upchurch's videos, when one simply runs a Google search of the word, "Ickedmel," the thumbnail for Defamation Specimen 1, including its title, is displayed on the first page. A screen capture of a Google search performed on August 20, 2023, is depicted below:



28.     Restated, Mr. Cedeno's own videos — from which he derives income — have been suppressed in Google's search algorithm by Mr. Upchurch's defamatory videos about Mr. Cedeno, further evidencing the damage to Mr. Cedeno's reputation.

29.     The following day, August 21, 2022, Mr. Upchurch uploaded another video that falsely states and/or implies that Mr. Cedeno (*i.e.,* Ickedmel) was linked to a hidden YouTube pedophilia website.   The statements and implications contained within this video and in its title are referred to as "Defamation Specimen 2."  This video is transcribed as follows:

> Dude.  The evidence is not stopping against these mother [f— k]ers.  All right.  So, we already linked Ickedmel to Ronnie Jones and showed y'all who both them really were and linked the bump-lip girl to them as well.  Bump lip girl just deleted her [f— k]ing YouTube, so I went to go type in her name on, uh, the [f— k]ing podcast thing.  The Xanamayx.  It goes to a YouTube channel that is talking about Kiely Rodni.
>
> And when you click the [f— k]ing comments dude, it is links to like child porn and [s— t].  Dude, it even says 18 and below.  Dude.  Dude.   Y'all some sick mother [f— k]ers.
>
> Anybody following Ickedmel after today, well, [f— k], we'll know where all the weirdos are., I guess.[11]

30.     In this August 21, 2022, video, the only reasons that Mr. Upchurch presents for his assertion that Ickedmel (*i.e.,* Mr. Cedeno) is linked to a hidden

---

[11] Ryan Upchurch, *Xanamay & ickedmel linked to hidden YouTube Pedo site* ☻ *kielyrodni*, https://www.youtube.com/watch?v=jjmo9M6LWqc,  last accessed on August 21, 2023.

YouTube pedo site (which is short for "pedophilia website") are that (1) certain links to pornographic videos had been placed into the chat feed of another YouTuber's video (said links being prominently displayed by Mr. Upchurch), and that (2) these links say, "18 and below."

31.     The other YouTuber, "Burden of Proof," from whose channel Mr. Upchurch found the aforesaid pornographic links, has absolutely no connection to Mr. Cedeno.  Thus, Mr. Cedeno had nothing to do with these links or with their placement onto the chat feed of this other YouTuber's video.

32.     Beyond this, as the screen-capture below that has been taken from Defamation Specimen 2 shows, the comments from this chat feed state in plain English that it has "adult porn videos only."  As for the comments written in German, even the most cursory use of Google Translate would show that they are completely devoid of any reference to pedophilia.



Defamation Specimen 2, at 0:56.[12]

33.     Nevertheless, if one were to assume, *arguendo*, that the website links that are depicted above do, in fact, point people to hidden pedophilia sites, as Mr. Upchurch seems to argue, then either Mr. Upchurch or someone he knows must have reached this conclusion by viewing the content found on these websites.  After all, he could not have based his assertion merely upon what these comments say since they do not reference child pornography or pedophiles in any way.

34.     Thus, Mr. Upchurch simply cannot prove that these websites are for pedophiles — let alone that Mr. Cedeno is linked to them — without implicating himself in the commission of at least one federal crime.[13]

35.     To be unambiguously clear, Mr. Cedeno is not accusing Mr. Upchurch of committing any federal crime pertaining to sex trafficking or pedophilia.  That is because the so-called "hidden YouTube pedo sites" that Mr. Upchurch references simply do not exist.  Accordingly, neither Mr. Upchurch nor Mr. Cedeno could have ever accessed them.

---

[12] Because the pornographic links may lead to viruses, these links are partially redacted in this depiction.  However, the unredacted links are available on the video for Defamation Specimen 2.  If the Court or counsel opposite would like to see the unredacted links, Mr. Cedeno will gladly amend this Complaint accordingly.

[13] Downloading child pornography, which one thinks would be ubiquitous at any "pedo site," is punishable by 5 to 20 years in a prison pursuant to 18 U.S.C. § 2252.  Likewise, being an accessory before the fact to a felony is punishable by the same term of confinement as the predicate offense pursuant to 18 U.S.C. § 2(b).  Also, the failure to report the commission of a felony under federal law with the intent to conceal the same is misprision and is punishable by up to 3 years in a federal penitentiary as per 18 U.S.C. § 4.  Mr. Upchurch necessarily would have committed at least one of these crimes if he had accessed a pedophilia website (or if he had asked an associate to access such a website for him).

12

36.     Nevertheless, by relying upon the contents of a non-existent website or alternatively, upon the existence of hidden YouTube pedophilia websites that he has clearly failed to disclose, Mr. Upchurch cannot assert that he was offering a constitutionally protected opinion.[14]

37.     On the contrary, Mr. Upchurch knew Defamation Specimen 2 and its title were false, or at the very least, he behaved with actual malice and/or with reckless disregard for the truth when he published these assertions.

38.     Defamation Specimen 2 has been viewed at least 167,000 times and has been liked 9,380 times.  Thus, over 9,000 people have expressed belief in what Mr. Upchurch has stated or implied.

39.     If over 167,000 views and over 9,000 likes were not bad enough, the complete reach of Defamation Specimen 2's libelous title—*i.e., Xanamay & ickedmel linked to hidden YouTube Pedo site* 😡 *kielyrodni*—is staggering.  Assuming a CTR rate of 2% to 10%, as described <u>supra</u>, Mr. Cedeno estimates that the libelous title to Defamation Specimen 2 has been impressed upon the feeds of between 1.6 million and 8.3 million people.  Thus, Defamation Specimen 2's  false and defamatory title has been seen by millions of people.

40.     Mr. Cedeno has never been a sex trafficker.

41.     "Ickedmel" is not a code word for sex trafficking.

---

[14] "A statement is 'pure opinion' only if the speaker states the facts on which he bases his opinion.… Pure opinion cannot constitute actionable defamation.… However, a speaker cannot invoke a 'pure opinion' defense, if the facts underlying the opinion are false or inaccurately presented." <u>Lipsig v. Ramlawi</u>, 760 So. 2d 170, 184 (Fla. Dist. Ct. App. 2000).

42.     Mr. Cedeno is not a pedophile.

43.     On August 21, 2022, Mr. Upchurch uploaded a video in which he plays a clip of several of his supporters talking about Mr. Cedeno. In this republished clip, which has been viewed at least 175,000 times, another YouTuber reveals that Ickedmel's real name is Melvin Cedeno and discloses that Mr. Cedeno operates a company in Florida.

> Ickedmel has a business…. So, it says, "Entity type – Florida limited liability company." Right. And that's "Ickedmel, LLC." … Alright. So first of all, we've got his real name. Right. His real name is Melvin Ced… Cedeno. Cedeno. OK. Here's his picture right here off of Pinterest. Melvin Cedeno. Ickedmel. Profile. Uh. Pinterest. I don't know if you guys have this information.[15]

Thus, on the day he claimed that Ickedmel is linked to a "hidden YouTube pedo site," Mr. Upchurch revealed Ickedmel's identity and whereabouts.

44.     Therefore, Mr. Upchurch intentionally directed the statements and/or implications complained of herein toward the specific end of defaming Mr. Cedeno, and not simply a YouTube figure named "Ickedmel."

45.     By stating and/or implying that Mr. Cedeno (a/k/a Ickedmel) was involved with sex trafficking and pedophilia, Mr. Upchurch caused actual injury to Mr. Cedeno. This injury, which occurred in Florida, includes, but is not limited to, the following:

---

[15] Ryan Upchurch, *Creek Squad was right the whole time 💯 kielyrodni*, https://www.youtube.com/watch?v=6apk6HOwgng, at 1:05, last accessed on August 20, 2023.

a.     On or about September 14, 2022, Mr. Cedeno received a Facebook message from Ralph Simard of Bangor, Maine.  Therein, Mr. Simard threatens to "put a gun" into Mr. Cedeno's "mother[f—k]ing mouth."   Mr. Simard calls Mr. Cedeno a "pedo" while referencing "Ryan" – three weeks after Mr. Upchurch had first implied that Mr. Cedeno was a pedophile.  Mr. Simard also references Xanamay and Tony Dodge, who appeared with Mr. Upchurch on a YouTube panel talking about Mr. Jones.  Ergo, Mr. Simard clearly speaks of Ryan Upchurch when he writes, "Ryan."  Moreover, since Mr. Simard is repeating what Mr. Upchurch had published about Mr. Cedeno, Mr. Simard is clearly reacting to Mr. Upchurch's false statement and/or implication.  As such, Mr. Simard clearly believes what Mr. Upchurch has said.  A copy of the entire correspondence (redacted of profanity) is attached hereto as Exhibit "A," and incorporated herein by reference.

b.     Mr. Cedeno also received messages from other followers of Mr. Upchurch, further evincing the damage to Mr. Cedeno's reputation and character.  See Exhibit "B," incorporated herein by reference.

c.     In view of Mr. Simard's death threat, Mr. Cedeno feared for the lives of his daughter and himself.  That same day, he filed a report concerning Mr. Simard's death threat with the Hollywood, Florida Police Department.  A copy of this report, redacted of confidential information, is attached hereto as Exhibit "C," and incorporated herein by reference.

d.     In response to Mr. Simard's death threat and the other hateful messages he received, which were all prompted by Mr. Upchurch's defamation and/or defamation by implication, Mr. Cedeno purchased security cameras for his home in Florida for protection.

e.     In the initial days following Mr. Upchurch's defamation and/or defamation by implication, Mr. Cedeno also lost subscribers to his YouTube channel.  Attached as Exhibit "D," incorporated herein by reference, are just a few of the comments and messages of viewers indicating that they were unsubscribing from his channel.

46.     Therefore, because of the false and defamatory statements and/or implications raised by Mr. Upchurch in his videos and in the written titles to said videos, Mr. Cedeno has suffered damage to his reputation and character, which, in turn, has led to pecuniary losses and severe mental anguish.

47.     Mr. Upchurch had actual knowledge that Mr. Cedeno's handle, Ickedmel, was not a sex-trafficking code word, as evidenced by his republication of Mr. Cedeno's explanation for how he got the name.  Likewise, Mr. Upchurch had actual knowledge that Mr. Cedeno was not linked to a hidden pedophilia website, as evidenced by there being no mention of pedophilia in the chat-feed comments describing the links to these supposed websites.  Ergo, Mr. Upchurch had actual knowledge of the wrongfulness of his conduct.

48.     Furthermore, given that his audience is comprised of more than 3,100,000 subscribers, Mr. Upchurch knew that there was a high probability that

injury or damage to Mr. Cedeno would result. Despite having this knowledge, Mr. Upchurch intentionally pursued the course of conduct complained of herein, which resulted in the injury or damage described herein.

49.     Thus, by performing the actions complained of herein, Mr. Upchurch had the specific intent of causing harm to Mr. Cedeno. He acted with malice and with deliberate disregard for Mr. Cedeno's safety and wellbeing – all for the singular purpose of growing his YouTube channel.

50.     On August 7, 2023, counsel for Mr. Cedeno delivered via facsimile to counsel for Mr. Upchurch a letter demanding retraction of the videos and titles claiming that Mr. Cedeno is linked to a hidden pedophilia website and that his handle is a sex-trafficking code word.

51.     On August 11, 2023, Mr. Upchurch uploaded a video wherein he refuses to retract any of his statements. Mr. Upchurch states in pertinent part:

> … Oh, icky [d—k] ["Ickedmel"] you look like a walking Avon bottle, you little [b— h] … Hold on. Yeah. I got your letters talking about, "Oh, we won't sue you if you retract all your statements and say it was fake." [f— k] you, [b— h]. Sue me. I don't give a [f— k] what you think. You're actually bothering me because the internet, mother[f— k]er. I don't live in the internet. What scared me out of my freedom of speech? … And oh, Ickedmel you crooked cop looking mother[f— k]er. I don't care about nothing you say either, [b— h]. What are you going to do? Yo, your colon don't even work, right? You been sitting in that chair so long?[16]

---

[16] Ryan Upchurch, *Sweaty Spagetti* [sic] *Shawty* [sic] 🤪, https://youtube.com/shorts/-mSHQXpALOo, last accessed on August 20, 2023.

52.     On August 12, 2023, counsel for Mr. Cedeno delivered an updated retraction letter to counsel for Mr. Upchurch. A copy of this letter and its attachments (which include the previous retraction letter), though redacted for profanity in the quoted defamation and for any Rule 408 material, is attached as Exhibit "E," and is incorporated herein by reference. [17]

53.     Mr. Upchurch has provided no retraction in response to Mr. Cedeno's demands. Therefore, Mr. Upchurch has acted – and does continue to act – with actual malice and with reckless disregard for the truth.

54.     Mr. Cedeno avers that Mr. Upchurch presented no valid opinion, nor did he exercise any privilege (absolute, qualified, or otherwise) under Florida law or Tennessee law when he published the aforesaid Defamation Specimens 1 and 2, including their respective titles. Moreover, Mr. Cedeno avers that neither the Tennessee Public Participation Act ("TPPA")[18] nor its Florida counterpart[19] has any effect in this Court.[20] Therefore, Mr. Upchurch is liable for the defamation and other tortious acts complained of herein.

---

[17] Although the profanity and Rule 408 material are redacted in this exhibit, such were not redacted in the letter delivered to Mr. Upchurch's attorney. If an unredacted copy is required for this pleading, Mr. Cedeno will happily amend this Complaint accordingly.

[18] T.C.A. §§ 20-17-101, *et seq*.ch

[19] Fla. Stat. Ann. § 768.295

[20] See <u>Mucerino v. Martin</u>, No. 3:21-cv-00284, 2021 U.S. Dist. LEXIS 228340, at *19 (M.D. Tenn. Nov. 30, 2021) (holding that the TPPA does not apply in federal court).

## CHOICE OF LAW

55.     Mr. Cedeno incorporates all the above paragraphs.

56.     In Tennessee, punitive damages are capped at the greater of $500,000 or twice the value of any compensatory damages awarded.[21]  However, in Florida, there is no cap on punitive damages when the Defendant has the specific intent of causing harm to the Plaintiff.[22]

57.     Likewise, in Tennessee, there is a $750,000 cap on non-economic damages.[23] However, in Florida, there are no such caps.[24]

58.     Thus, a conflict of laws exists.

59.     All injuries complained of herein occurred in Florida.

60.     The parties have no relationship with each other except through (1) the transmission of Mr. Upchurch's YouTube videos, which Mr. Cedeno was made aware of and viewed in Florida; and (2) Mr. Upchurch's call to Mr. Cedeno's show via Mr. Cedeno's 954-area-code telephone number while Mr. Cedeno was webcasting in Florida.

---

[21] See T.C.A. § 29-39-104.

[22] See Fla. Stat. Ann. § 768.73 (c) ("Where the fact finder determines that at the time of injury the defendant had a specific intent to harm the claimant and determines that the defendant's conduct did in fact harm the claimant, there shall be no cap on punitive damages.").

[23] See Yebuah v. Ctr. for Urological Treatment, PLC, 624 S.W.3d 481 (Tenn. 2021) (holding that there is an aggregate cap of $750,000 for non-economic damages).

[24] Cf. R.J. Reynolds Tobacco Co. v. Schleider, 273 So. 3d 63 (Fla. Dist. Ct. App. 2018) (holding that a total of $21 million in non-economic damages fell squarely within the realm of prior cases).

61. Given that a conflict of laws exists, that the injury occurred in Florida, and that the parties' direct contacts were limited to Florida, the state having the most significant relationship to the parties and the occurrence at issue herein is Florida. Therefore, Florida's substantive law should apply.[25]

62. Mr. Cedeno hereby seeks relief under Florida law for Causes of Action I and III. However, in the abundance of caution, Mr. Cedeno seeks relief in the alternative under Tennessee law for Causes of Action IV through VII.

63. Finally, for Cause of Action VIII, Mr. Cedeno seeks injunctive relief, regardless of which state's law is selected.

**CAUSES OF ACTION**

**I.    Defamation (Florida Law)**

64. Mr. Cedeno incorporates all the above paragraphs.

65. Mr. Cedeno has complied with the pre-suit notice provisions of Fla. Stat. Ann. § 770.01 by demanding retraction of Defamation Specimens 1 and 2, including their respective titles, _supra_, at least five days prior to the filing of this suit. Said retraction letter (_i.e.,_ Exhibit "E") was faxed to Mr. Upchurch's attorney on Saturday, August 12, 2023, with confirmation thereof attached hereto as Exhibit E-1.

66. The tort of defamation under Florida law has the following five elements: (1) publication; (2) falsity; (3) the actor must act with knowledge or reckless

---

[25] See Hataway v. McKinley, 830 S.W.2d 53, 60 (Tenn. 1992) (holding that the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship ).

disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory.[26]

67.     Defamation Specimen 1, which includes its written title, was published to between 1.2 million and 6.1 million YouTube viewers. Likewise, Defamation Specimen 2, which includes its written title, was published to between 1.6 million and 8.3 million YouTube viewers. Thus, the first element of defamation under Florida law (*i.e.*, publication) is met.

68.     Mr. Upchurch disclosed to his audience that Mr. Cedeno is "Ickedmel." Therefore, when Mr. Upchurch referred to "Ickedmel," he was referring to Mr. Cedeno.

69.     Mr. Upchurch published Defamation Specimens 1 and 2, including their respective titles, to his YouTube audience. He exercised no privilege and enjoyed no immunity from suit when he did so.

70.     Defamation Specimen 1, which includes its written title, claims that Mr. Cedeno's handle, "Ickedmel," is a sex-trafficking code word. This is false. Defamation Specimen 2, which includes its written title, claims that Mr. Cedeno (a/k/a "Ickedmel") is linked to a hidden YouTube pedo (or pedophilia) website. This, too, is false. Thus, the second element of defamation under Florida law (*i.e.*, falsity) is met.

---

[26] See <u>Jews for Jesus, Inc. v. Rapp</u>, 997 So. 2d 1098, 1106 (Fla. 2008) (describing the elements of defamation in Florida).

71.     Although Mr. Cedeno has a YouTube channel, he is nevertheless a private person.  Furthermore, allegations concerning whether he is a sex trafficker or a user of a hidden pedophilia website are not public controversies.  Therefore, Mr. Cedeno is not a public figure – limited purpose or otherwise – for the purposes of defamation law.

72.     The very day that Mr. Upchurch proclaimed that "Ickedmel" was a sex-trafficking code word, he also played a video where Mr. Cedeno gave a different reason for the name's origin.   Thus, Mr. Upchurch knew that Defamation Specimen 1, including its title, was false, or at the very least Mr. Upchurch must have harbored subjective doubts.

73.     Likewise, Mr. Upchurch gives no factual basis to support his contention that Mr. Cedeno is linked to a hidden YouTube pedophilia website.  In fact, the very website links that Mr. Upchurch references contradict his position.  Thus, Mr. Upchurch knew that Defamation Specimen 2, including its title, was false, or at the very least he must have harbored subjective doubts.

74.     Therefore, Mr. Upchurch acted with actual malice and/or reckless disregard for the truth, far surpassing the requisite level of negligence in this case to impute fault for defamation.  Ergo, the third element of defamation under Florida law (*i.e.*, fault) is met.

75.     As a direct and proximate result of Mr. Upchurch's publication of Defamation Specimens 1 and 2, including their respective titles, Mr. Cedeno suffered

actual injury, fulfilling the fourth element of defamation under Florida law (*i.e.*, injury). As stated above, Mr. Cedeno suffered, *inter alia*, as follows, *viz.*:

a.     First, Mr. Cedeno suffered direct harm to his character and reputation, as evidenced by the hateful messages and comments that Mr. Cedeno has received, which include a death threat from Mr. Simard. It is also evidenced by various people's comments on Mr. Upchurch's videos that indicate belief in these lies. It is also evidenced by the thousands of likes that Mr. Upchurch's videos have garnered.

b.     Second, the death threat from Mr. Simard, particularly, and the other hateful messages that he received, generally, caused Mr. Cedeno severe mental anguish, including, but not limited to, severe anxiety and sleeplessness, thereby prompting him to seek police intervention and to purchase of security cameras.

c.     Third, Mr. Cedeno has suffered pecuniary damages, including the costs of purchasing security cameras, the loss of revenue associated with people who dropped their subscriptions after Mr. Upchurch's had published his videos, and the loss of future revenue.

76.     Defamation Specimen 1, including its facially defamatory title, accuses Mr. Cedeno of adopting a sex-trafficking code word as his handle, and thereby implies that he is a sex trafficker. Likewise, Defamation Specimen 2, including its facially defamatory title, expressly states that "Ickedmel," (*i.e.,* Mr. Cedeno) is linked to a website for pedophiles.

23

77.     Sex trafficking is a criminal offense.  Similarly, pedophiles, by definition, desire to have sex with children, which also is a criminal offense.

78.     Given that most of the community, speaking by and through their elected representatives in Congress and in the statehouses of Florida, Tennessee, and elsewhere, have condemned sex trafficking and pedophilia by enacting criminal prohibitions thereto, Defamation Specimens 1 and 2, including their respective titles, tend to prejudice Mr. Cedeno in the eyes of, at minimum, a substantial and respectable minority of the community.  Ergo, the fifth and final element of defamation under Florida law (*i.e.*, a defamatory statement) has been met.

79.     By failing to retract Defamation Specimens 1 and 2 upon request, Mr. Upchurch demonstrated actual malice justifying punitive damages.

80.     Ergo, Mr. Cedeno avers that Mr. Upchurch committed the tort of defamation – more specifically, libel – as to Defamation Specimens 1 and 2, including their respective written titles.

## II.     Defamation by Implication (Florida Law)

81.     Mr. Cedeno incorporates all the above paragraphs.

82.     As mentioned, Mr. Cedeno has complied with the requirements of the Florida pre-suit notice statute.

83.     Defamation by implication applies in circumstances where literally true statements are conveyed in such a way as to create a false impression.[27]

---

[27] <u>Jews for Jesus</u>, 997 So.2d at 1108.

84.     In Defamation Specimen 1, Mr. Upchurch takes the word "Ickedmel" and rearranges the letters to spell, "cel me kid," or "licked me." In the video, he writes anagrams of "Ickedmel" on a sheet of paper.

85.     It is literally true that "cel me kid" is an anagram of "Ickedmel." It is also literally true that "licked me" is an anagram of "Ickedmel."

86.     Nevertheless, Mr. Upchurch communicated these literally true statements in such a way as to convey the impression that Mr. Cedeno wants to buy children or to be licked, which is a euphemism for oral sex. Then, when read in conjunction with the title to Defamation Specimen 1, the anagrams presented by Mr. Upchurch imply that Mr. Cedeno wants to traffic in children.

87.     The aforesaid implications are false.

88.     Said implications were published to millions of YouTube viewers.

89.     As set forth above, Mr. Upchurch acted with negligence, and/or actual malice and/or with reckless disregard for the truth when he published the aforesaid implications since he knew the real origin of Mr. Cedeno's name.

90.     As set forth above, these false implications caused Mr. Cedeno actual injury.

91.     Given that the aforesaid false implications associate Mr. Cedeno with behavior that a majority of the members of the community, acting by and through their elected officials, have criminalized, said implications were defamatory.

92.     Ergo, Mr. Cedeno avers that Mr. Upchurch committed the tort of defamation by implication – more specifically, libel by implication – as to Defamation Specimen 1, including its written title.

### III.     Intentional Infliction of Emotional Distress
### (Florida Law)

93.     Mr. Cedeno incorporates all the above paragraphs.

94.     The actions complained of herein were intentional or reckless.

95.     The actions complained of herein were so outrageous that they are not tolerated by a civilized society.  Restated, Mr. Upchurch knew or should have known that he would enrage people into lashing out at Mr. Cedeno by falsely publishing to millions of people that Mr. Cedeno was a sex trafficker and a pedophile. Nevertheless, with reckless disregard for Mr. Cedeno's safety and wellbeing, Mr. Upchurch published this falsehood on his channel.

96.     The actions complained of herein caused Mr. Cedeno severe mental injury, including sleepless nights and anxiety.  As a direct and proximate result of Mr. Upchurch's behavior, Mr. Cedeno received at least one death threat from a person with a known history for criminal violence.

97.     Ergo, Mr. Upchurch committed the tort of intentional infliction of emotional distress pursuant to Florida law regarding Defamation Specimen 1 and 2, including its respective titles.

### IV.     Defamation (Tennessee Law)

98.     Mr. Cedeno incorporates all the above paragraphs.

99.    Mr. Cedeno avers that the pre-suit notice requirement of T.C.A. § 29-24-103 (a) does not apply since Mr. Upchurch does not produce a newspaper or a periodical.  Nevertheless, in the abundance of caution, Mr. Cedeno notes that his letter of August 12, 2023, complies with this requirement.

100.    Mr. Upchurch knew that Defamation Specimens 1 and 2 were false and defaming to Mr. Cedeno.  Alternatively, he acted with reckless disregard for the truth or with negligence in failing to ascertain the truth of the statements and/or implications.

101.    Mr. Upchurch caused Mr. Cedeno to suffer actual injury, including, but not limited to, damage to his reputation and character, mental anguish, and pecuniary losses.

102.    Ergo, Mr. Upchurch committed the tort of defamation pursuant to Tennessee law regarding Defamation Specimens 1 and 2, including their respective titles.

### V.    Defamation By Implication
### (Tennessee Law)

103.    Mr. Cedeno incorporates all the above paragraphs.

104.    As stated, Mr. Cedeno avers that the pre-suit notice requirement of T.C.A. § 29-24-103 (a) does not apply.  Nevertheless, in the abundance of caution, Mr. Cedeno notes that his letter dated August 12, 2023, complies with this requirement.

105.    Mr. Upchurch published Defamation Specimen 1, and the meaning thereof reasonably conveyed the implication that Mr. Cedeno was involved in illegal sex trafficking and the sexual exploitation of children.

27

106.     This defamed Mr. Cedeno, bringing disgrace to not only his YouTube handle (Ickedmel), but also to his legal name (given Mr. Upchurch's revelation to his audience that Ickedmel was Melvin Cedeno of Florida).

107.     Restated, Mr. Upchurch rearranged the letters in Mr. Cedeno's handle, "Ickedmel," to imply that Mr. Cedeno is a sex trafficker and a pedophile.

108.     As stated above, Mr. Upchurch acted with negligence, and/or actual malice and/or with reckless disregard for the truth, causing Mr. Cedeno actual injury.

109.     Ergo, Mr. Upchurch committed the tort of defamation by implication pursuant to Tennessee law regarding Defamation Specimen 1, including its title.

## VI.     False Light (Tennessee Law)

110.     Mr. Cedeno incorporates all the above paragraphs.

111.     As stated, in Defamation Specimen 1, Mr. Upchurch rearranges the letters of Mr. Cedeno's handle, Ickedmel, to present the false impression that Mr. Cedeno is a sex trafficker.

112.     As stated, in Defamation Specimen 2, Mr. Upchurch states with no factual basis that Ickedmel is linked to a hidden YouTube pedophilia website.

113.     Then, Mr. Upchurch revealed on his YouTube channel that Ickedmel's real name is Melvin Cedeno.

114.     By doing so, Mr. Upchurch gave publicity to Mr. Cedeno's affairs that placed him before the public in a false light, *to-wit*, that he was a sex-trafficking pedophile who accesses child pornography online.  Given the criminal nature of these

offenses, this false light in which Mr. Cedeno was placed would have been highly offensive to a reasonable person.

115.   As stated, Mr. Upchurch had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

116.   Ergo, Mr. Upchurch committed the tort of false light regarding Defamation Specimens 1 and 2, including their respective titles.

## VII.   Intentional Infliction of Emotional Distress
### (Tennessee Law)

117.   Mr. Cedeno incorporates all the above paragraphs.

118.   The actions complained of herein were intentional or reckless.

119.   The actions complained of herein were so outrageous that they are not tolerated by a civilized society.

120.   The actions complained of herein caused Mr. Cedeno severe mental injury, including sleepless nights and anxiety.

121.   Ergo, Mr. Upchurch committed the tort of intentional infliction of emotional distress pursuant to Tennessee law regarding Defamation Specimen 1 and 2, including its respective titles.

## VIII.  Injunctive Relief
### (Florida or Tennessee Law)

122.   Mr. Cedeno incorporates all the above paragraphs.

123.   By not removing this defamatory content from YouTube (*i.e.,* Defamation Specimens 1 and 2), Mr. Upchurch continues to cause harm to Mr. Cedeno's reputation and character.

124.   Therefore, Mr. Cedeno seeks a preliminary injunction and a permanent injunction to require Mr. Upchurch to remove the defamatory content from YouTube that is complained of herein.

## DAMAGES

125.   Mr. Cedeno incorporates all the above paragraphs.

126.   Mr. Cedeno suffered damage to his reputation and character, as evidenced by, *inter alia*, the messages he received after Mr. Upchurch's defamatory statements and/or written titles were published.   Given that Florida law has no cap on non-economic damages, Mr. Cedeno seeks at least $3.5 million for the damage to his reputation and character.[28]

127.   But for the false and defamatory content that Mr. Upchurch had published about Mr. Cedeno, Mr. Simard would not have distributed a death threat to Mr. Cedeno.   Likewise, Mr. Cedeno would not have received other hateful and demeaning messages from followers of Mr. Upchurch.   Ergo, Mr. Cedeno suffered severe mental anguish – including fear for the lives of his family members and himself, sleepless nights, and anxiety – as the direct and proximate result of Mr.

---

[28] The combined estimated number of impressions for Defamation Specimens 1 and 2, where the defamatory titles were read irrespective of whether the video was viewed, is somewhere between 2.8 million and 14.4 million.   Thus, $3.5 million equates to between only 25¢ per impression and $1.25 per impression.   It also equates to less than $1.12 for each of Mr. Upchurch's 3.1 million subscribers.

Upchurch's false and defamatory statements. Given that Florida law has no cap on non-economic damages, Mr. Cedeno seeks at least $3.5 million for the damage to his mental health.[29]

128. Mr. Cedeno has suffered (and will continue to suffer) financial losses. Mr. Cedeno incurred out-of-pocket expenses of between $600 and $850 to install cameras to surveil his property. He also lost non-paying subscribers to his YouTube channel, which negatively impacted his income from monetization and potential "super-chats" (where viewers essentially tip the content creator). He has also lost paying subscribers. At present, these pecuniary damages are hard to ascertain. However, they will be computed before trial and shall be disclosed in discovery. In the meantime, Mr. Cedeno's aggregate monetary damages are estimated to exceed $10,000.00.

129. Mr. Cedeno also seeks punitive damages. Given that Florida law would place no cap on punitive damages since Mr. Upchurch intended to cause injury to Mr. Cedeno, and in view of his actual malice in publishing (and then in his refusal to retract) the aforesaid defamatory material, Mr. Cedeno seeks at least $14 million in punitive damages.[30]

---

[29] Ibid.

[30] The combined estimated number of impressions for Defamation Specimens 1 and 2, where the defamatory titles were read irrespective of whether the video was viewed, is somewhere between 2.8 million and 14.4 million. Thus, the demand for punitive damages equates to only between 97¢ per impression and $5.00 per impression.

130. Mr. Cedeno also seeks reimbursement of his attorneys' fees, plus all costs of this action, plus post judgment interest.

WHEREFORE, PREMISES CONSIDERED, the Plaintiff herein, MELVIN CEDENO, seeks entry of a judgment against the Defendant, RYAN UPCHURCH, for compensatory damages in the aggregate amount of at least $7,010,000, plus punitive damages of at least $14,000,000, plus all costs of this action, plus attorney's fees pursuant to Fla. Stat. Ann. § 57.105 (or any other relevant statute or common law principle), plus post-judgment interest.

FURTHERMORE, the Plaintiff seeks a preliminary injunction and a permanent injunction requiring that Mr. Upchurch remove said Defamation Specimens 1 and 2 from YouTube.

AND FINALLY, the Plaintiff seeks general relief, whether legal or equitable, that this Court may deem meet and proper in the premises.

RESPECTFULLY SUBMITTED, on this the 21st day of August, 2023,

MELVIN CEDENO

/s/ Matthew D. Wilson
BY: _____
Matthew Wilson (TN BPR 028175)
The Law Office of Matthew Wilson
2218-B West Main St.,
Tupelo, MS 38801
Phone:   (662) 260-6544
Fax:        (662) 546-4893
Email: *lawyermatt@betteraskmatt.com*