IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| MELVIN CEDENO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | NO. 3:23-cv-876 |
| v. | ) | |
| | ) | JUDGE CAMPBELL |
| RYAN UPCHURCH, ET AL., | ) | MAGISTRATE JUDGE HOLMES |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM**

Pending before the Court is Defendant Ryan Upchurch's ("Upchurch") Motion to Dismiss Plaintiff's Complaint (Doc. No. 14). Plaintiff Melvin Cedeno ("Cedeno") filed a response in opposition (Doc. No. 21), and Upchurch filed a reply (Doc. No. 24). For the reasons discussed below, the motion will be **GRANTED** in part and **DENIED** in part.

### I.    FACTUAL BACKGROUND

Cedeno alleges that Upchurch is a YouTube personality who has approximately 3,140,000 subscribers. (Doc. No. 1 ¶ 2). Cedeno is also a YouTube personality and is known by the handle "Ickedmel". (*Id.* ¶ 3). In August 2022, teenager Kiely Rodni disappeared after leaving a party near Tahoe National Forest in California. (*Id.* ¶ 4). Upchurch and Cedeno subsequently started making videos discussing her disappearance. (*Id.*). Cedeno alleges that Upchurch theorized Rodni had "been kidnapped by sex traffickers and pedophiles." (*Id.* ¶ 5). Cedeno also alleges that Upchurch made two videos accusing Cedeno of "vile and heinous acts." (*Id.* ¶ 6). Specifically, Cedeno alleges Upchurch published a YouTube video on August 20, 2022 titled "Ickedmel is a sex trafficking [sic] code word", which is transcribed as follows:

> All right so check this out. You know how these [******] weirdos out here who like do stuff to kids and [****] have like code words? Okay, well the dude who's

> like, "Hey Ryan, I don't know anything about this missing kid." Okay, look at his name. Look how it's spelled. All right. His YouTube name is spelled I-C-K-E-D-M-E-L. "Ickedmel." If you unscramble it, it says…. That's only using the letters that are there — and it also says, "licked me." Why is his name unscrambled say, "cel me kid" [and] "licked me," like … like "sell me kid. If you sound it out it says, "Sell me kid." Why? Why does it say, "licked me?" If you look for children and your page is dedicated to looking for children and covering missing children. Why? Why? Why? This is [******] weird disco man. Explain this mother [******]!

(*Id.* ¶ 20).

Cedeno also alleges Upchurch published a YouTube video on August 21, 2022 titled "Xanamay & ickedmel linked to hidden YouTube Pedo site", which is transcribed as follows:

> Dude. The evidence is not stopping against these mother [****]ers. All right. So, we already linked Ickedmel to Ronnie Jones and showed y'all who both them really were and linked the bump-lip girl to them as well. Bump lip girl just deleted her [****]ing YouTube, so I went to go type in her name on, uh, the [****]ing podcast thing. The Xanamayx. It goes to a YouTube channel that is talking about Kiely Rodni. And when you click the [****]ing comments dude, it is links to like child porn and [****]. Dude, it even says 18 and below. Dude. Dude. Y'all some sick mother [****]ers. Anybody following Ickedmel after today, well, [****], we'll know where all the weirdos are., I guess.

(*Id.* ¶ 29). Cedeno alleges that he suffered damage to his reputation and character as a result of the videos and received threatening messages from Upchurch's supporters, including a death threat. (*Id.* ¶ 8).

Cedeno brings claims against Upchurch for defamation, defamation by implication, and intentional infliction of emotional distress under Tennessee and Florida law and false light invasion of privacy under Tennessee law – all arising from the two YouTube videos posted by Upchurch on August 20 and 21, 2022.

On November 6, 2023, Upchurch filed the pending motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. (Doc. No. 14).

2

Case 3:23-cv-00876    Document 30    Filed 07/30/24    Page 2 of 9 PageID #: 238

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint for failure to state a claim upon which relief can be granted. For purposes of a motion to dismiss, a court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual allegations, accepted as true, to state a claim for relief that is plausible on its face. *Id.* at 678. A claim has facial plausibility when the plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* In reviewing a motion to dismiss, the Court construes the complaint in the light most favorable to the plaintiff, accepts its allegations as true, and draws all reasonable inferences in favor of the plaintiff. *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Thus, dismissal is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Guzman v. U.S. Dep't of Children's Servs.*, 679 F.3d 425, 429 (6th Cir. 2012).

Further "a motion to dismiss under Rule 12(b)(6) is generally not the appropriate vehicle to dismiss a claim based on an affirmative defense" because "as with all affirmative defenses, it is the burden of the defendant to prove the elements of the defense." *Mixon v. Trott L., P.C.*, No. 19-1366, 2019 WL 4943761, at *2 (6th Cir. 2019). A plaintiff typically does not have to anticipate or negate an affirmative defense to survive a motion to dismiss. *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012). However, an affirmative defense can be the basis for dismissal under Rule 12(b)(6) if "the plaintiff's own allegations show that a defense exists that legally defeats the claim for relief." *Est. of Barney v. PNC Bank, Nat. Ass'n*, 714 F.3d 920, 926 (6th Cir. 2013) (citation omitted).

### III. ANALYSIS

**A. Choice of Law**

"A federal court sitting in diversity must apply the choice-of-law rules of the forum state." *Stone Surgical, LLC v. Stryker Corp.*, 858 F.3d 383, 389 (6th Cir. 2017) (internal citation omitted). When determining choice-of-law questions, Tennessee follows the "most significant relationship" approach, which applies "the law of the state where the injury occurred…unless some other state has a more significant relationship to the litigation." *Hataway v. McKinley*, 830 S.W.2d 53, 59 (Tenn. 1992)). "[G]enerally the law of the state where the injury occurred will have the most significant relationship to the litigation." *Id.* When determining which state's substantive law should govern, the following factors should be considered:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

*Restatement (Second) of Conflict of Laws*, § 145 (1971). !

The parties appear to agree with the choice of law framework but disagree on which substantive law should govern. Upchurch contends that Tennessee law should govern this action. In support, Upchurch asserts that Tennessee law provides significantly more protections for speakers than those of Florida, does not recognize defamation per se, and has a statutory cap on damages recoverable in defamation cases. (Doc. No. 15 at PageID # 141). The Court disagrees.

Cedeno is domiciled in Florida, was injured in Florida, Upchurch's social media posts were published in Florida, and Upchurch directed communication to Cedeno while he was located in Florida. Accordingly, the Court finds that Florida law should govern this action.

Because Cedeno asserted mirror-image state law tort claims under both Florida and Tennessee law, the Tennessee tort claims are largely duplicative. Moreover, Cedeno contends that he brought the Tennessee claims in the event the Court applied Tennessee law. (Doc. No. 21 at PageID # 214). Accordingly, the Court finds that the Tennessee tort claims, namely, Counts IV, V, VI, and VII of the Complaint, should be dismissed.

**B. Statute of Limitations**

"Even when applying the law of a different jurisdiction…Tennessee courts still apply Tennessee law on matters that are procedural." *Pratt v. Greyhound Lines, Inc.*, No. 1:09-cv-272, 2010 U.S. Dist. LEXIS 16496, at *3 (E.D. Tenn. Feb. 24, 2010) (internal citations omitted). "In Tennessee, a statute of limitations is considered a procedural issue." *Id.* (internal citation omitted). Accordingly, Tennessee law applies to the statute of limitations issue.

Upchurch argues that some of the allegedly defamatory statements were spoken and thus are barred by the 6-month statute of limitations period for slander claims. In response, Cedeno contends that each of the two videos at issue include the following written titles: "'*Ickedmel' is a sex trafficing [sic] code word*" and "*Xanamay & ickedmel linked to hidden YouTube Pedo site…*". (Doc. No. 21 at PageID # 196 – 197). Cedeno argues that each of the titles communicate a stand-alone defamatory meaning and thus, are libel and are not barred by the statute of limitations.

"[T]he law of defamation… includes both slander and libel. A libel action involves written defamation and a slander action involves spoken defamation." *Quality Auto Parts Co. v. Bluff City Buick Co.*, 876 S.W.2d 818, 820 (Tenn. 1994).

The Court finds that the two defamatory events about which Cedeno complains include written titles to the videos that Cedeno contends are defamatory. Accordingly, Cedeno has alleged

libel, which has a longer limitations period Cedeno satisfied by filing his Complaint on August 21, 2023. (Doc. No. 1).

**C. Defamation Claims**

Upchurch also contends that Cedeno failed to state claims for defamation and defamation by implication. A plaintiff must prove the following elements to prevail on a defamation claim under Florida law: "(1) publication; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory." *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008).

A claim for defamation by implication occurs when literally true statements create a false impression and thus can be defamatory. "Defamation by implication is 'premised not on direct statements but on false suggestions, impressions and implications arising from otherwise truthful statements.' *Jews for Jesus*, 997 So. 2d at 1107. The protections afforded to defendants in defamation actions apply to the tort of defamation by implication." *Ozyesilpinar v. Reach PLC*, 365 So. 3d 453, 460 (Fla. Dist. Ct. App. 2023) (internal citation omitted).

Here, taking the allegations in the Complaint as true, the Court finds that Cedeno has alleged facts sufficient to state claims for defamation and defamation by implication.

**D. First Amendment**

Upchurch next argues that his statements were "opinions", not facts, and thus are protected by the First Amendment; this argument invites the Court to draw inferences in Upchurch's favor, which it cannot do. Upchurch argues that the First Amendment insulates him from the defamation claim.

"Both the First Amendment and Florida law place limits on the type of speech that may be the subject of a defamation action. The First Amendment protections 'are rooted in the 'profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open.'…And they 'reflect[ ] the reality that exaggeration and non-literal commentary have become an integral part of social discourse.'" *Deeb v. Saati*, 778 F. App'x 683, 687 (11th Cir. 2019) (internal citations omitted). "In keeping with this principle, the Supreme Court has held that statements that 'cannot reasonably be interpreted as stating actual facts about an individual' cannot be the subject of a defamation suit." *Id.* (internal citation omitted).

However, the Supreme Court has refused "to create a wholesale defamation exemption for anything that might be labeled 'opinion'" and "recognized that 'expressions of 'opinion' may often imply an assertion of objective fact.'" *Masson v. New Yorker Magazine Inc.*, 501 U.S. 496, 516 (1991), cleaned up. In *Milkovich v. Lorain Journal Co.*, the Supreme Court rejected a categorical First Amendment protection for "opinion" speech, holding that "we are not persuaded that… an additional separate constitutional privilege for 'opinion' is required to ensure the freedom of expression guaranteed by the First Amendment." 497 U.S. at 21; *Id.* (holding that a statement is not an opinion where it "is sufficiently factual to be susceptible of being proved true or false."). The Eleventh Circuit has recognized that "[i]f a statement can reasonably be interpreted as stating or implying actual facts about the plaintiff, however, the statement may be actionable even if it is phrased as an opinion." *Deeb*, 778 F. App'x at 687 (internal citations omitted). Moreover, "[f]alse and defamatory statements of fact, we have held, have 'no constitutional value.'" *Counterman v. Colorado*, 600 U.S. 66, 76, 143 S. Ct. 2106, 2115, 216 L. Ed. 2d 775 (2023).

The Eleventh Circuit has also recognized that "[u]nder Florida law, a defendant publishes a 'pure opinion' when the defendant makes a comment or opinion based on facts which are set

forth in the publication or which are otherwise known or available to the reader or listener as a member of the public… Mixed expression of opinion occurs when an opinion or comment is made which is based upon facts regarding the plaintiff or his conduct that have not been stated in the publication or assumed to exist by the parties to the communication." *Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018) (internal citations omitted). "Whether the statement is one of fact or opinion and whether a statement of fact is susceptible to defamatory interpretation are questions of law for the court." *Id.* (internal citation omitted).

As an initial matter, the Court finds that Upchurch inserts documents into the record that are not specifically referenced in the Complaint, nor are they central to Cedeno's claims; thus, the Court will not consider those documents (Exhibits E and F to Upchurch's Memorandum) because, as Cedeno correctly observes, some of the documents attached to the Complaint or referenced therein were for the limited purpose of issues such as the choice of law and were not central to Cedeno's claims.[1]

Turning to the Complaint and viewing the allegations in the light most favorable to Cedeno, the Court finds that the first allegedly defamatory statement – that Cedeno's YouTube handle "Ickedmel" is a "sex trafficing [sic] code word" does not appear to be opinion. (Doc. No. 1 ¶ 20). Similarly, Cedeno alleges that the second defamatory event included, among other things, the title "Xanamay and Ickedmel linked to hidden YouTube Pedo site", which does not appear to be opinion. (Doc. No. 1 ¶ 29). Whether other statements attributed to Upchurch were defamatory will be an issue for a later time. Cedeno has alleged that Upchurch made non-opinion factual statements

---

[1] Upchurch's memorandum cites repeatedly to "Exhibits" that do not appear in the record. The docket reflects Exhibits E and F attached to Upchurch's Memorandum and that Exhibits A – D were video files provided separately, but those files, while referenced in the Complaint for some purposes, were clearly provided as exhibits in support of Upchurch's argument well beyond how Cedeno referenced certain statements in the Complaint. Counsel is cautioned against such tactics going forward and should perhaps reserve such exhibits for summary judgment or trial.

sufficient to survive Upchurch's motion to dismiss the defamation claims based on First Amendment protection.

As far as Upchurch's argument that Cedeno must prove actual malice because Cedeno is a general or limited public figure, the Court cannot conclude based on the allegations in the Complaint that he is either; perhaps this issue will be better presented with the benefit of discovery and further briefing, but it cannot serve as the basis for dismissing Cedeno's defamation claims at this juncture.

### E. Intentional Infliction of Emotional Distress

Upchurch argues for dismissal of Cedeno's claim for intentional infliction of emotional distress on the same basis as his argument for dismissing the defamation claims and argues that the published statements are protected by the First Amendment because they relate to a matter of public concern.

Accepting the allegations in the Complaint as true, the Court finds that Cedeno has pled facts sufficient to state a claim upon which relief may be granted. Accordingly, Upchurch's motion to dismiss Cedeno's intentional infliction of emotional distress claim is denied.

## IV. CONCLUSION

For the reasons stated above, Upchurch's motion to dismiss (Doc. No. 14) will be **GRANTED** in part and **DENIED** in part.

An appropriate Order will enter.

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE